ACCEPTED
02-15-00106-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
3/25/2015 3:23:10 PM
DEBRA SPISAK
CLERK

IN THE COURT OF APPEALS

SECOND COURT OF APPEALS DISTRICT

FORT WORTH, TEXAS

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

03/25/2015 3:23:10 PM

DEBRA SPISAK
Clerk

No. 2-15-00106-CV

In re Todd Durden,

*Relator*,

_____

REPORTER'S SWORN RECORD

_____

Todd A. Durden
State Bar of Texas No. 06276680

THE DURDEN LAW FIRM
131 E. Vine St.
Keller, Texas 76248
Tel: (817) 431-0099
Fax: (817) 431-0096
Email: durdenlawyer@att.net
*Relator*

REPORTER'S RECORD

VOLUME 1 OF 1

Trial Court Cause No. 324-551602-14

| IN THE MATTER OF THE | )( | IN THE DISTRICT COURT |
| MARRIAGE OF: | )( | |
| BETTE JILL SCOTT | )( | TARRANT COUNTY, TEXAS |
| AND | )( | |
| CALVIN GREGORY SCOTT | )( | 324TH JUDICIAL DISTRICT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MOTION FOR CONTEMPT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BE IT REMEMBERED that on the 24th, day of September, 2014, the above-entitled and numbered cause came on for hearing before the Honorable Beth A. Poulos, Associate Judge of the 324th District Court, Fort Worth, Tarrant County, Texas, and whereupon the proceedings hereinafter contained were had of record:

Proceedings were reported by Stenotype Method.

APPEARANCES

**MR. ROBERT T. STITES**
ATTORNEY AT LAW
State Bar of Texas No. 19251900
933 W. Weatherford Street, Ste. #200
Fort Worth, Texas 76102-1812
Phone No. (817) 336-7577
Fax No. (817) 336-7583

ATTORNEY ON BEHALF OF MOVANT

**MR. TODD A DURDEN**
THE DURDEN LAW FIRM
State Bar of Texas No. 06276680
131 East Vine Street
Keller, Texas 76248
Phone No. (817) 431-0099
Fax No. (817) 431-0096

ATTORNEY ON BEHALF OF RESPONDENT

# C H R O N O L O G I C A L   I N D E X

## VOLUME NO. 1

## MOTION FOR CONTEMPT

September 24th, 2014                                            PAGE

PROCEEDINGS................................................... 4

### M O V A N T ' S   E V I D E N C E

WITNESS:

| | Direct | Cross | Voir Dire |
|---|---|---|---|
| CALVIN G. SCOTT | 10 | N/A | N/A |
| ROBERT T. STITES | 20 | 23 | N/A |

### E X H I B I T   I N D E X
#### M O V A N T

| NUMBER | MRKD | IDNTD | OFFRD | RECD | VOL |
|---|---|---|---|---|---|
| PX-EXHIBIT NO. 1: | 15 | 15 | 15 | 17 | 1 |
| PX-EXHIBIT NO. 2: | 18 | 18 | 18 | 20 | 1 |

### E X H I B I T   I N D E X
#### R E S P O N D E N T

| NUMBER | MRKD | IDNTD | OFFRD | RECD | VOL |
|---|---|---|---|---|---|
| RX-EXHIBIT NO. 1: | 24 | 24 | 24 | 25 | 1 |

COURT REPORTER'S CERTIFICATE.......................................31

P R O C E E D I N G S

THE COURT:  All right.  The Court calls Cause Number 324-5516o2-14, in the matter of the marriage of "Bette" or "Bette" --

MRS. SCOTT:  It's "Bette Jill".  I go by "Jill".

THE COURT:  -- Scott and Calvin Gregory Scott.

The matter that we are undertaking today is the Motion for Enforcement and for Sanctions.  And at this point the Court will take Judicial Notice of it's file.  And, specifically, the Motion for Enforcement and for Sanctions that were filed on August 28th, 2014.

Is the Movant ready?

MR. STITES:  Yes.

THE COURT:  Is the Respondent ready to go forward?

MR. DURDEN:  Yes, your Honor.

THE COURT:  Mr. Stites.

MR. STITES:  May it please the Court.  May I make a statement to you?

THE COURT:  Yes.

MR. STITES:  When I'm done, I'm going to ask you to take notice of the underlying Court Order, the relevant portions of which are cited in the Motion for Enforcement and for Sanctions of which you just stated.

Calvin Gregory Scott doesn't believe that these orders apply to him.  On August the 25th, I received a fax, an email and a certified letter, all three, from Attorney Durden admitting that his

client, Number 1; accessed community funds, to wit, the Texas Trust Certificate Of Deposit, the identification number is correctly stated on Page 2 of our enforcement motion, cashed it out in the amount of $70,089.00, deposited half of that amount, approximately $35,042.00, into Attorney Durden's IOLTA Trust Account for prospective, apparently, attorney fees. The remainder, and this is according to Mr. Durden's fax, letter and certified letter to me, dated August 25th, the remainder of the funds were allegedly deposited into a new Texas Trust Account, the account number is correctly recited on my contempt pleading, in the name only of Calvin Gregory Scott. This was done without the signed written agreement of the parties; without any order of the Court in advance. The reason that sanctions have been asked for is that it is apparent to me that Mr. Durden was complicit in this action either by advising his client to take the action or certainly after he cashed out this CD. Which, obviously, cost the community estate whatever accrued interest was there. He had the monies to be placed under his control and in his trust account for attorney fees that he had not even yet rendered.

I've got a proposed order which, again, I'm asking that Mr. Scott be held in contempt. I'm not asking for incarceration. I'm asking that he be found in contempt, however. That he pay a fine. That he pay my attorney fees. And that Mr. Durden be sanctioned in a monetary amount for his actions, his obvious actions, in being complicit with this Court Order violation or maybe even advising his client to take these actions.

And with that statement, I'm ready to proceed, your

Honor.

MR. DURDEN: If I may briefly respond, your Honor.

THE COURT: Yes.

MR. DURDEN: May it please the Court. The subject of attorney fees and the payment of those attorney fees have been at issue between the parties. There had been discussions -- there's a letter in the Court's file of which you've taken Judicial Notice. And attorney fees had been paid by Mrs. Scott to Mr. Stites throughout this case. The -- I will say there was a letter that Mr. Stites has referenced, but one thing that's very important, your Honor, one thing and I have this in two letters that I've written to him, one-half was paid toward attorney fees and expenses. The other half was put into an account of both parties' name. This documentation was provided to them immediately. And it's simply a false statement in a pleading for him to say it was put in to an account with his name only. I expect that there would be a copy of the checkbook for this new account that has both names. And in showing that, no, this was not money that was taken out and accessed in such a way that prohibited, as to the remainder of the CD, the other party from accessing of that.

Finally, there were two separate letters bringing that to Mr. Stites' attention. I'm concerned that he's here saying that it's in Mr. Scott's sole name only. I'm concerned about that representation. I will say that after he and I called to discuss the attorney fees issue, okay -- It was actually a Certificate of Conference of his filing the motion. I said I don't agree with you, but I will preserve the money in my IOLTA Account. So all of the money is there. And it is there today. So

as far as there's been no depleting. And this was my -- and I have --

Again, this is a letter I actually sent this before I received by mail, a certified mail copy of his motions. But it was -- It's been Mr. Scott's intent at all times to follow the letter and spirit of the order. I understand the Court's reading. I understand the Court's reading. But I will certainly say as far as his position in this case, he understands there's -- there was a -- there was a savings account from which attorney fees were being paid which no longer has any funds. After the mediation, both sides were going to need to have attorney fees to move forward. Now, would it have been more -- I guess that's what I would say, that a good faith effort was made to comply with the orders and to present this issue to the Court. And I will just tell you right away, I understand the way that you are reading that, and I will just tell the Court I'm sorry. I did not read it that way. My client didn't read it that way. But we've done everything we can to try to bring this issue before the Court and do so in a way that respects the parties and their rights, their right to be properly represented in this action. And to avail themselves of the rights of the orders therein presented.

Thank you, your Honor.

THE COURT: We are going to go off the record for one moment.

(At this time a discussion was held off the record, after which the Proceedings continued as follows:)

THE COURT: Mr. Stites, call your first witness.

MR. STITES: My first witness would be Calvin Gregory Scott, adversely, under the Adverse Witness Rule.

THE COURT: You have asked for jail time?

MR. STITES: No, specifically, not. I asked for a finding of contempt, a fine and attorney fees and sanctions against Attorney Durden for being complicit in this.

THE COURT: I think if you ask for a finding of contempt, it is a sanction that the Court can make and confine the Respondent to jail. So I am going to give him his 5th Amendment warning.

MR. STITES: Very good.

THE COURT: Mr. Scott, you are charged with contempt of this Court. As such, you are entitled to be represented by an attorney. If you are too poor to afford one, a Court appointed attorney will represent you. You are entitled to have a record of this hearing made by a Court Reporter. And standing besides you is a competent attorney. And you have the Court Reporter taking down all of this. So those rights have been protected by you so far.

The contempt charge against you must be proven beyond a reasonable doubt. You have the right to remain silent and not make any statements and you may not be forced to testify in this hearing if you do not wish to do so.

If the written charging instrument requests you be imprisoned more than six months or requests you be fined more than $500.00, you have a right to a Jury. And neither of those provisions are in the motion. So you do not have the right to a Jury here today.

Do you understand these warnings?

MR. SCOTT:  Yes.

THE COURT:  Thank you.

MR. DURDEN:  Your Honor, my client invokes his 5th Amendment privilege.

THE COURT:  Okay.

MR. STITES:  I have the right -- I respect that.  I do have the right to ask him some questions and have him invoke whatever he's going to invoke in response to my questions.

THE COURT:  Right.

Please take the stand.

Mr. Durden, be vigilant.

MR. DURDEN:  Thank you, your Honor.

THE COURT:  Mr. Stites.

MR. STITES:  Judge Poulos, I said this earlier in my opening statement --

THE COURT:  Yes --

Be seated please.

MR. DURDEN:  Yes.

THE COURT:  The que to the witness that you are making an objection and that he shouldn't answer the question is you on your feet.  Otherwise, I would appreciate you stay seated so that que remains obvious to him.

MR. DURDEN:  Thank you, your Honor.

MR. STITES:  May it please the Court.

THE COURT: Yes.

MR. STITES: Can I address you by standing?

THE COURT: I thought you were going to ask this witness questions.

MR. STITES: I am. I said this in my opening statement, but I would ask you to take notice of the underlying Court Order signed March 21st, 2014. The relevant portions of which are recited in the Motion for Enforcement and for Sanctions filed August 28th. You did take notice of the motion.

THE COURT: The Court will take Judicial Notice of the temporary orders entitled temporary orders in the file which were signed by me on March 21st of 2014.

MR. STITES: Thank you very much.

May I proceed?

THE COURT: Yes, you may.

CALVIN GREGORY SCOTT

said witness, having been first duly cautioned and sworn, was

called as a witness on behalf of the MOVANT, and

testified as follows, to-wit:

DIRECT EXAMINATION

BY MR. STITES:

Q. You are Calvin Gregory Scott; is that true?

MR. DURDEN:  Your Honor, my client invokes his 5th Amendment privilege.

MR. STITES:  I can ask him who he is and prove -- One of my burdens is to prove that he is the Respondent.  He is the obligor on the temporary orders.  I don't think that's in dispute, but I believe I have to give evidence to you in that regard.

MR. DURDEN:  Your Honor, it's my position that he doesn't have to testify at all.  If he wishes to overrule my objection --

THE COURT:  I am overruling your objection.

Thank you.

MR. STITES:  May I redirect the question?

THE COURT:  Yes.

Q.    (BY MR. STITES:)  You are Calvin Gregory Scott?

MR. DURDEN:  I re-urge my objection, your Honor.

A.    Yes.

THE COURT:  If you are going to object, if you want me to rule on it, you need to stand and make your objection.

MR. DURDEN:  Thank you, your Honor.

THE COURT:  Your client has answered because you were not on your feet.

MR. DURDEN:  Thank you.

THE COURT:  Thank you.

It is overruled in any case.

Q.    (BY MR. STITES:)  Mr. Scott, you are married to Bette Jill Scott; is that true?

MR. DURDEN: Your Honor, my client invokes his 5th Amendment privilege not to answer the question.

THE COURT: Overruled.

I didn't mean for you to object -- When I said, "be vigilant", I mean when you hear a question that deals with the enforcement that might incriminate your client, then that's when I think that you need to object. But you don't have to object to every question proposed to your client. Because I will overrule them as we go along. And all you are doing is making the proceedings lengthy in nature and repetitive.

MR. DURDEN: I don't wish to tire the Court. I wish then to make a running bill. It's my position that my client should not even be able to be called as a witness under the 5th Amendment. I understand the Court has overruled my objection on that. I would ask the Court then to make a running bill as to every question asked of my client, of Mr. Scott, that I would be objecting to the question on the basis of the 5th Amendment privilege, and that your ruling would be overruled until I -- if I make no objection and then if I make -- re-urge the objection that you can rule on it.

THE COURT: I don't believe there's any such thing as a running bill. But what I will do is give you an opportunity to make a bill at the conclusion of the hearing to that effect. But I don't want to impose any kind of chilling effect on appropriate objections which deal with the enforcement and may tend to incriminate your client.

MR. DURDEN: Thank you, your Honor.

MR. STITES: May I proceed?

THE COURT: Yes.

Q. (BY MR. STITES:) Mr. Scott, you are the same Calvin Gregory Scott named as Respondent in the temporary orders signed on March 21st, 2014; is that true?

MR. DURDEN: I object, your Honor, on the basis of the 5th Amendment privilege. That's one of the elements he has to prove. My client does not have to establish --

THE COURT: Sustained.

Q. (BY MR. STITES:) Well, are you the Respondent in this divorce case, Mr. Scott?

MR. DURDEN: Your Honor, I object again on the 5th Amendment privilege. He doesn't --

THE COURT: Overruled.

A. Yes.

MR. STITES: Based on that, can the record reflect that we have identified Calvin Gregory Scott, the person that's now testifying, as the one in the same Respondent in the Motion for Enforcement and for Sanctions indicated in the pleading of August 28th and reference to the order of March 21st, 2014.

THE COURT: The record reflects what the record reflects.

MR. STITES: Thank you very much.

THE COURT: You are welcome.

Q. (BY MR. STITES:) Mr. Scott, Mr. Durden represents you today; is that true?

MR. DURDEN: No objection, your Honor.

A.    Yes.

Q.    He represented you on August the 25th, 2014; is that true?

MR. DURDEN:  I would object, your Honor, on the 5th Amendment privilege.

THE COURT:  Overruled.

MR. DURDEN:  I'm going to object on the basis of relevancy.

MR. STITES:  Well, like I said in my opening statement, on August the 25th, 2014, Attorney Durden sent me a lengthy fax, email, regular mail letter --

THE COURT:  Do you have a legal response to the legal objection of relevance?

MR. STITES:  The answer is "yes".  His agent, Mr. Durden, made admissions in a written letter to me of August the 25th, where he admits he, Mr. Durden, admits the allegations contained in the contempt pleading.

MR. DURDEN:  That's why the 5th Amendment applies, your Honor.  First of all, because he's trying to establish that an agency relationship exists.  Secondly, the -- I would ask the Court to take -- We are taking up, my understanding is, the contempt issue.  Which is the quasi-criminal action, not the sanctions action, only the quasi-criminal action.

THE COURT:  It's all in the motion.

MR. DURDEN:  I understand that, your Honor.  But the -- My position is this witness can not be asked questions as to whether he

made statements or made statements through us.

THE COURT: The witness may answer the question as to whether you represented him on a date, sir.

Overruled.

MR. DURDEN: Thank you, your Honor.

MR. STITES: May I redirect the question?

THE COURT: Yes.

Q. (BY MR. STITES:) Mr. Scott, did Mr. Durden represent you on August the 25th, 2014?

A. Yes.

Q. Did he have the right as your lawyer on August 25th, 2014, to state your legal position with respect to issues in this divorce case?

MR. DURDEN: Objection, 5th Amendment privilege.

MR. STITES: I would really think that that's obviously inherent with everything that we have happening here. I think it's a fair question.

THE COURT: Let's go go off the record.

(At this time a discussion was held off the record, after which the Proceedings continued as follows:)

(At this time Movant's Exhibit No. 1 was marked for identification, after which, the Proceedings continued as follows:)

THE COURT: Mr. Stites has offered Movant's 1 in the form of a letter from The Durden Law Firm dated August 25th of 2014.

Mr. Durden, any objection as to the admission of Movant's

1?

MR. DURDEN: Yes, your Honor. I object to this letter as not being the admission of the alleged contemptnor. I object to this letter as being hearsay. And I object on the 5th Amendment privilege.

MR. STITES: May I respond?

THE COURT: Yes.

MR. STITES: I think that I have established, I don't think I really need to establish, that on August 25th, Mr. Durden was Mr. Scott's lawyer, his agent. And he has the right to speak for him, as agent. And any admissions that the lawyer made with regard to the facts relevant to this case, which these admissions clearly are right spot on, are put on Mr. Scott. So that the objection that was made is not a good objection. He's relied on this, and even argued this. He doesn't deny it happened.

THE COURT: The objection is overruled.

MR. DURDEN: Your Honor, briefly, one further thing.

Relevancy as to this letter. This letter does not state that Mr. Scott in anyway -- It does not state --

THE COURT: Overruled as to relevance.

Anything else?

MR. DURDEN: Yes. Your Honor, I object because it's not a statement that the alleged contemptnor --

THE COURT: What's your legal objection?

MR. DURDEN: There's no showing of an adoption of this statement by the principal.

THE COURT: Overruled.

Anything else?

MR. DURDEN: I object on the basis of the 5th Amendment privilege.

THE COURT: You did already. And I overruled it.

Anything else?

MR. DURDEN: No, your Honor.

THE COURT: It's admitted.

MR. STITES: Could I ask the Court to do two things: Number 1, to look at the third page of this document, the Texas Trust Credit Union membership application, to wit the account that was opened with the $35,000.00 that wasn't put in Mr. Durden's trust account, and draw your attention to the fact at the very top of the page under the account number it says, "Ownership Type: Single Party". If you look down you see the signature of Calvin G. Scott.

THE COURT: I see that.

MR. STITES: Thank you very much. Could I also draw -- This concerns the issue of the sanctions. Could I also direct the Court's attention to the second paragraph of the letter, Page 1, "Accordingly, my client has accessed community funds pursuant to Texas Family Code Section 1. -- 3.102 for litigation."

THE COURT: "Expenses".

MR. STITES: If you look at that section, which I have, that has not a darn thing to do with litigation, litigation expenses. It deals with sole management of community property in a marital context. So

the legal basis for which he has apparently recommended his client, or been complicit with his client, is wrong. It doesn't deal with this at all. So I would ask the Court to consider that.

And I'll also ask the Court to consider Exhibit Number 2, which is my immediate response to Attorney Durden saying hold your horses. Where is my "hold your horses" letter?

(At this time Movant's Exhibit No. 2 was marked for identification, after which, the Proceedings continued as follows:)

THE COURT: Any objection?

MR. DURDEN: Yes, your Honor.

Hearsay.

THE COURT: Sorry?

MR. DURDEN: Hearsay.

THE COURT: Mr. Stites?

MR. STITES: My letter -- I would be happy to testify. It's my letter to him.

THE COURT: You are not a party to this case. So what's your response?

MR. STITES: My response is: I wrote the letter to him and it's a basis for my request for attorney fees and the basis for my request that you take some action about this. I can certainly testify. I took the oath. I can testify to firsthand information. I have firsthand information. I would be happy to testify and swear that I sent this to Attorney Durden. He's never denied it. And this objection is not very

well made.

I'll testify to my attorney fees too, please.

THE COURT: It is hearsay. So the objection is well made.

It's an out of Court statement, not made by a party, offered to prove the matter asserted within the statement. That's clear hearsay. And I don't hear any exception that you cite.

MR. STITES: Well, I'll be happy to testify to my letter. That that will make it easier, your Honor. And I was sworn. At the appropriate time, whatever that appropriate time is.

THE COURT: Go ahead. Testify from the table.

MR. DURDEN: Your Honor, it would be the same objection, whether he puts it in paper or if he testifies to what he said earlier. It's still hearsay.

THE COURT: With respect to attorney fees, it's not.

MR. DURDEN: If it's a limited offer, your Honor --

THE COURT: That's what he just said in his argument, that it was being admitted for the purpose of sustaining attorney fees in this case.

MR. STITES: Well, it's obviously so. We've already established what happened by Durden's Exhibit 1 --

MR. DURDEN: I would object to any rule because this was made as a general offer. Which, again, it could be used for evidence for all purposes. If this is being offered and it's admitted solely as to the issue of attorney fees, that's a separate issue. And I don't object on

that basis.

MR. STITES:  Suits me.

THE COURT:  It's admitted.

MR. STITES:  May it please the Court --

MR. DURDEN:  For the limited purpose, your Honor?

MR. STITES:  May it please the Court --

THE COURT:  I can read it myself.  It doesn't please the Court to read it to me --

MR. DURDEN:  It --

THE COURT:  Can you just stop talking when I'm talking?  Is that possible.

Do you know how hard that is -- And I don't know why we are having a record.  But if we are having a record made, please be courteous enough to allow him to do it in a controlled way.

Mr. Durden, do you have a comment you want to make?

MR. DURDEN:  Just briefly.  When you said, "It's admitted", my understanding is:  It's admitted for the limited purpose.

THE COURT:  Exactly.

MR. DURDEN:  Thank you.

THE COURT:  Anything else, Mr. Stites?

MR. STITES:  I would like to testify to my legal fees.

THE COURT:  Go ahead.

MR. STITES:  Do you want to hear the background about the fact that I was an Eagle Scout and Board Certified --

THE COURT:  I wouldn't belief it if you testified to it,

even under oath.

MR. STITES:  That I'm an Eagle Scout?

THE COURT:  I would like to dispense with testimony I've heard before.

Mr. Durden, do you want to stipulate to --

MR. DURDEN:  I stipulate, your Honor --

THE COURT:  Okay.  Thank you.

MR. DURDEN:  -- I stipulate to his qualifications.

MR. STITES:  I'm Robert Stites.  I'm Board Certified in Family Law.  I have been Board Certified since 1984.  A month or so ago I just recertified in Family Law for an additional five years.  I've been licensed by the Supreme Court --

THE COURT:  I think he stipulated to all of that.

MR. STITES:  Thank you very much.

Judge, I received Exhibit Number 1 by fax, by hard copy, by certified mail, and I believe by email too.  But certainly by those three.  I received that on August the 25th, Exhibit 1.  Exhibit 2, I sent by email to Mr. Durden on the next day, August the 26th, expressing, obviously, that I was unhappy -- we were unhappy, and saying please do not force me to seek relief from the 324th District Court.  Which, unfortunately, we were required to do.

I have expended seven and a half hours of my time on this.  I have prepared proposed orders.  I have reviewed the documents. I've prepared the pleadings.  I've caused Mr. Scott to be served.  By the way, the service fee from the private process server was $150.00.  He was

served on September 3rd at 9:20 a.m., it looks like.  The filing fees to file the contempt motion, which I've prepared, Motion for Enforcement, is $31.00.

I spent a lot of time talking to my client about this. I've been here at the Court's attendance, I've had nothing else to do except this matter, since 8:30 this morning.  I've been here since 8:30 primarily --

THE COURT:  Is all of that included in the seven point five?

MR. STITES:  Yes.  I anticipate that there will be some time after this to prepare whatever order comes from this.  There's going to be some order.  That there will be some time, probably an hour or so to prepare it, send it to Todd Durden, whatever objections, get it signed by you.  So that would be an additional hour.  So I charge at an hourly billing rate of $350.00.  That's fair, just and reasonable for a lawyer with my experience and my competence, having been a Family Law Attorney for 38 years or so.  That's comparable to other attorneys with my skill, competence and ability in Tarrant County.  I'm asking for attorney fees of $2,750.00 to be taxed, and I'm asking it be to taxed against monies under Mr. Scott's control.  He gets money under his control.  Jill gets in 3K a month.  I'm asking it not to be just taken out of community funds.  That punishes Jill for something she shouldn't be punished for.  Mr. Scott has money under his control.  He has a credit card.  He has a Wells Fargo credit card, perhaps he can put fees, attorney fees, on.  I'm asking that he pay $150.00 for the service fee and $35.00 for the filing fee.

Everything I've talked about I have firsthand knowledge of. All of the attorney fees are based on my understanding of what a reasonable attorney fee of a lawyer of my competence, skill and ability in Tarrant County.

That's all. Thank you.

THE COURT: Mr. Durden.

MR. DURDEN: Thank you, your Honor.

May it please the Court.

CROSS-EXAMINATION

BY MR. DURDEN:

Q. Let me see if I understand your testimony. Seven and a half hours was for drafting, filing, preparing and for the hearing on the motion of enforcement and sanctions; is that correct?

A. Talking to the client, reviewing the exhibits, preparing the proposed Court Order, being present today since 8:30, preparing and talking with Jill a number of times about this, seeing if there can be any resolution without a Court hearing. And then I'm going to spend an hour or so of time after today preparing an order. So, yes, to all of those conditions.

Q. All right. Let me show a document to you. Did you receive this document?

A. You are handing me a fax, probably a hard copy, you send me things -- You send me three copies of things. I don't recall,

specifically. I can't believe you would hand something to me and make some representation that you sent it, if you didn't, in fact, send it. So I don't really recall.

Q. Is that your fax number?

A. (817) 336-7583 is my fax.

Q. Does it show that this fax was received?

A. It does.

Q. Okay. Now, in spending seven and a half hours, wouldn't it be customary to review the correspondence received on the motion before you actually go to Court on it?

A. Let me see. Well, the answer is: We filed our pleading on August the 28th. This was sent to me August the 29th. Your client was served September 3rd. Responding to that, I'm not sure that I did respond, specifically, to it. The answer to your question is "no".

MR. DURDEN: Let me mark this as an exhibit.

(At this time Respondent's Exhibit No. 1 was marked for identification, after which, the Proceedings continued as follows:)

MR. DURDEN: Your Honor, I offer Respondent's Exhibit 1.

THE COURT: Any objection?

MR. STITES: It's not relevant.

MR. DURDEN: Your Honor, under the Rule of Optional Completeness you have the first letter. You have his response. This would be my response to his response.

THE COURT: How is that not relevant, Mr. Stites?

MR. STITES:  Well, it deals with the real estate appraisal, which has nothing to do with this.  You have to look at it.  I don't know it's relevant.  I would object to it.

THE COURT:  It's admitted over objection.  I find it relevant.

Q.   (BY MR. DURDEN:)  Mr. Stites, you had already prepared this motion when you spoke to me on the phone, hadn't you?

A.   I don't remember talking to you on the phone on August the 29th --

Q.   August the 28th when you filed it, you had already prepared it, hadn't you?

A.   When I filed it I had already prepared it, yes.

Q.   Let me restate the question.

That letter is dated August 29th.

A.   Fax and there should be a letter too at the same time.  I typically do.  I don't recall you and I talking about any of this at that time.

MR. DURDEN:  We would object as nonresponsive.

THE COURT:  Sustained.

Q.   (BY MR. DURDEN:)  Now, the day before at about 4:50 p.m., you and I spoke on the phone.

A.   I don't remember that.  I'm sorry.

Q.   You filed this electronically at or about the same time we were on the phone, didn't you?

A.   I don't recall being on the phone.  The file mark is August the

28th, 2014, at 5:11 p.m., e-faxed -- e-filed --

Q.   Do you remember --

A.   I don't stay until 5:00 in the evening.  John Eck takes care of this.

Q.   My question to you was:  Do you remember what time of day it was that we spoke on the phone?

A.   I don't recall speaking to you, Todd.  I'm sorry.

Q.   At the time you filed this, you did fax it and -- or any other -- anything else that would give me to understand that it had been filed until I received it by certified mail; is that correct?

A.   I'm sure we sent it to you by certified mail shortly after it was filed.  If you are on the e-filing system you get a copy of this as a matter of course, I do.  Some lawyers are and some lawyers aren't.  But the e-filing if you're on that system --

MR. DURDEN:  Objection.  Nonresponsive.

THE COURT:  Sustained.

Q.   (BY MR. DURDEN:)  I was not e-served with a copy of that motion, was I?

A.   I don't have any knowledge about that.  You should have been. I get regularly served e-filings from my --

MR. DURDEN:  Objection.  Nonresponsive.  Everything after "I don't know".

THE COURT:  Sustained.

Q.   (BY MR. DURDEN:)  Now, Mr. Stites, in addition to the Motion for Contempt that was set and we heard today, we had a pretrial conference;

isn't that correct?

A.   I had requested a pretrial conference today, yes.

Q.   We had a hearing on that matter; is that correct?

A.   We spent a little bit of time on that.

Q.   Now, in the exhibit that you offered to the Court, I had asked for your help in cooperating with me in order to get an appraisal on the house; isn't that true?

MR. STITES:  I don't know what relevance that has with the contempt pleading.  So I object.

THE COURT:  What's the relevance?

MR. DURDEN:  Your Honor, as to the issue of attorney fees.

THE COURT:  Sustained as to relevance.

MR. DURDEN:  I'm sorry.  Okay.

Q.   (BY MR. DURDEN:)  Is it usual and customary in Tarrant County for attorneys to agree to matters which are not truly in dispute?

A.   Todd, every situation is different.  Dealing with you has been difficult.  Sometimes you say things that I find out later are not correct, sadly.

MR. DURDEN:  Objection.  Nonresponsive.

THE COURT:  Sustained.

Come on you guys.  Let's get through this, all right?  It's about attorney fees.  Did he spend it?  Was it reasonable?  Was it necessary?  Let's go.

MR. DURDEN:  Okay.

THE COURT: I'm leaving at noon for lunch.

MR. STITES: Sounds good to me.

MR. DURDEN: I'll pass the witness, your Honor.

MR. STITES: Do you want any other evidence with respect to the underlying contempt motion?

THE COURT: No.

MR. STITES: Is there any issue with the fact that Mr. Calvin Gregory Scott who testified is, in fact, the same Calvin Gregory Scott, who is the Respondent --

THE COURT: There's absolutely no issue. It's on the record.

MR. STITES: I think that you understand what has brought us here and why we've had to do this. I think you understand that there wasn't any resolution to this until you heard it, based on the statements that Durden has made to you.

I wish you would consider the documents that he submitted to me as opposed to not necessarily the things that he said here today.

MR. DURDEN: May I add something, just in closing.

THE COURT: Uh-huh.

MR. DURDEN: There's usually four points we are supposed to submit to the Court for the Court to consider in setting attorney fees; usual and customary, reasonable and necessary. My question would be: What was really necessary in this case, in light of this -- of this misunderstanding or disagreement between the parties. And what's the appropriate resolve. I would say as far as usual and customary goes, I

think the Court, under Chapter 38 of the Civil Practice and Remedies Code, can take Judicial Notice of that, and also the practice here in Tarrant County.

We do have a couple of other motions.

THE COURT: You are going to have to reset them. They are not going to get heard today.

MR. DURDEN: Thank you very much, your Honor.

MR. STITES: May I respond to that quickly and then shut up?

THE COURT: Yes.

MR. STITES: Your Honor, this order says neither party will access or deplete, then it lists some things, Texas Trust CD's. Then it says, "signed written agreement of both parties or order of the Court." That is as clear as a bell. And Attorney Durden is arguing to you as a lawyer an hour ago that it is not clear. If that doesn't indicate to you that we had to come to Court to resolve this --

THE COURT: All right. I will render by letter to y'all, hopefully, by tomorrow, after I think about the testimony, the arguments, and the evidence that's been admitted. And if I don't render by Friday, somebody needs to call me, okay?

MR. DURDEN: Thank you, your Honor.

THE COURT: Thank you.

MR. DURDEN: Again, you have taken Judicial Notice of the file. I would ask that you to find that there is no real injustice that is at issue in this case.

Thank you.

THE COURT:  Thank you.

(Close Of Proceedings)

C E R T I F I C A T E

STATE OF TEXAS                     )(
                                   )(
COUNTY OF TARRANT                  )(

     I, KELVIN E. JOHNSON, Official Court Reporter in and for the 324th Associate Court, Tarrant County, Texas, do hereby certify that the above and foregoing typewritten pages contain a full, true and correct transcription of my shorthand notes requested by counsel for the parties upon the occasion set forth in the caption hereof, as reduced to typewriting by me or under my direction.

     I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

     WITNESS my hand this the __3rd_____ day of __October_____, A.D., 2014.

                              Kelvin E. Johnson
                              _____
                              Expiration Date: December 31st, 2015
                              Official Court Reporter
                              324th Associates Court,
                              Tarrant County, Texas 76196-0211
                              (817) 884-1192

## DURDEN LAW FIRM

Todd A. Durden, Esq.

131 E. Vine St.
Keller, TX 76248
*durdenlawyer@att.net*

*Office:* 817/431-0099
*Fax:* 817/431-0096
*www.thedurdenlawfirm.com*

Robert T. Stites, Esq.
933 West Weatherford St.
Fort Worth, Texas 76102

August 25, 2014
*Via Fax: 817-336-7583*
*Via First Class Mail*

Re:     *ITMOTMO Bette Jill Scott and Calvin Gregory Scott*
        Cause No. 324-551602-14

Dear Mr. Stites:

We are in receipt of your correspondence dated August 20, 2014, wherein you present a counter offer to the settlement offer Mr. Scott made in mediation with Dale O'Neal. My client cannot accept this settlement offer. So, as it stands, the parties are still quite a bit off in their settlement positions.

Accordingly, my client has accessed community funds pursuant to Texas Family Code Section 3.102 for litigation expenses. Specifically, MegaFlex CD, identification number 155517-90, was cashed today for a value of $70,089. One half of the total, $35,042, is deposited into my IOLTA account, to be applied to litigation expenses. The remainder has been deposited into a new Texas Trust account, account number 404797-30 in the names of Mr. and Mrs. Scott. Please see the attached documentation from Texas Trust Credit Union detailing these transactions.

I look forward to your cooperation in minimizing the costs and attorney fees necessary at this juncture. First, an appraisal will need to be done of the house, and of course, the appraiser will need access to the house in order to conduct an appraisal. The differences in values between the parties necessitate a professional appraisal. I would appreciate your cooperation in allowing access to the house such that a motion and hearing is not necessary.

Further, the contents of the house need to be valued. My client wishes for a video recording to be made of a walkthrough of the house, and wishes to be present when it is made. This is to assure him that contents have not been taken from the house, and also form a basis for an appraisal of the contents of the home. Certainly the household goods and furnishings in a home worth half a million dollars are not without value, but no value for these items is reflected upon your client's settlement proposal.



EXHIBIT
*PX-1*

To:     Robert T. Stites, Esq.                          August 25, 2014
From:   Todd A. Durden                               Page 2 of 2

Another difference that needs to be explored is the value of survivor benefit annuity. As you are probably aware, Mrs. Scott enjoys a 75% survivor annuity on Mr. Scott's pension. An actuary will need to be employed to properly value this asset, and he will be presented for deposition. Along with the deposition of the actuary, the deposition of the CPA will need to be taken. You have taken the position that the amount of monies used by Mr. Scott for his addiction is approximately $20,000.00. We believe the true amount is $10,000.00, and this will be borne out by a deposition of Mr. Rice.

Further, a valuation on the country membership will need to be performed by a professional. Although it cannot be sold, it does have value, at least to the parties. The value may have to be set at replacement value, but apparently neither party wishes to give it up. My client is willing to take the country club membership at the cost value.

Finally, my client would like access to the family photos over 40 years of marriage. It is his intent to take the hard copies and digitize them, which he may be able to do on his time and with his equipment. In any event, the pictures over the 40 years of marriage are valuable, and he desires to enjoy access to them as Mrs. Scott currently does.

Thank you for your attention to this letter and please respond as to the appraisal of the house at your earliest convenience.

Sincerely,

Todd A. Durden

TAD/jcg

Enclosures:    As Stated

cc:           Client                                   Via Email

--------------------------------------------------------------------------------
See receipt for reference check #0000229109    check $35,042.04
--------------------------------------------------------------------------------
Acct # 0000404797                                                            08/25/14

DUREN LAW FIRM

RE: CALVIN G SCOTT

PAYABLE THROUGH:
WACHOVIA BANK N.A.
BUFORD, GA
3119

64-306/611
TEXAS TRUST CREDIT UNION
1900 COUNTRY CLUB DR.
MANSFIELD, TX 76063

229109



**TEXAS TRUST**
C R E D I T   U N I O N
1900 COUNTRY CLUB DR.
MANSFIELD, TX 76063
(972) 263-5171

| DATE |
| --- |
| 08/25/14 |

**CASHIER'S CHECK**             $35,042.04

** THIRTY FIVE THOUSAND FORTY TWO DOLLARS AND 04 CENTS **

TEXAS TRUST CREDIT UNION

PAY TO THE ORDER OF    DUREN LAW FIRM

RE: CALVIN G SCOTT

Issuer Accepts as Drawer/Drawee

Amounts in excess of $10,000.00 require second signature

⑈0000229109⑈ ⑆061103056⑆0⑈40010765416⑈

Secondary Check Disbursed  -35,042.04
DUREN LAW FIRM
Ref number:          01  229109

Withdrwl from SCOTT'S LEGAL 30
Prev Bal:        70,084.07
Amount:        35,042.04
New Bal:        35,042.03
Seq:          #327720

Acct *****97
Eff: 08/25/14
Tlr: 0353
Doc Number:

Date: 08/25/14
Time: 1:14pm
9637002

**TEXAS TRUST**
C R E D I T   U N I O N

Authorized by

ID Source:
☐ Drv Lic
☒ Sigcard
☐ 2nd ID
☐ Other

Per Nick FSO

Enter for a chance to win $50!!

Your opinion is important to us.
Please share your experience with
the service provided by
SHARI during today's visit.

Go to texastrustcu.org/survey
and enter the following
response code: 1CC-RXRHJ-19



| | Account: | 0000404797-01 |
| --- | --- | --- |
| | Ownership Type: | Single Party |
| | Date: | 08/25/2014 |
| | Created By: | Nick Watson |
| | Approved By: | _____ |

## TEXAS TRUST
### CREDIT UNION

## Membership Application

Please Refer to your Account Agreement for a description of the different aspects and conditions of account ownership available to you. Your account will be a Single Party Account unless you identify a Joint Owner below and all parties sign the Membership Application. All joint Accounts are designated as Joint with Right of Survivorship.

The undersigned, as authorized representative (s) of the Membership Applicant, hereby make application for membership in TEXAS TRUST CREDIT UNION and agree to subscribe to at least one share. In considering this application and/or any request for financial services, the undersigned authorize the Credit Union to verify credit and employment history and/or have a credit-reporting agency prepare a credit report on the undersigned, as individuals. The undersigned agree to conform to the Credit Union's rules, regulations, bylaws and policies now in effect and as amended or adopted hereafter. The undersigned also acknowledge receipt of the Credit Union's Account Agreement, Truth-in-Savings Disclosures, Rate and Fee Schedule, Funds Availability Disclosures and Electronic Funds Transfer Disclosures, which are incorporated into and made a part of this application, and agree to the terms and conditions stated therein, in addition to any amendments the Credit Union may make from time to time. THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHODING.

### Primary Account Holder

| First | | Middle | Last | | | | | Membership Eligibility |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Calvin | | G | Scott | | | | | Live |

| Address | | | | Apt. | City | | State | Zip |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1635 Saddle Creek Apt 1727 | | | | | Arlington | | Tx | 76015 |

| SSN/TIN | Date of Birth | Home Phone | | Work Phone | | Mobile Phone | ChexSystems |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 348469218 | 09/22/1951 | 817-473-2560 | | 817-366-3459 | | | |

| ID 1 Number | ID 1 Type | | E-Mail | | Thumbprint |
| --- | --- | --- | --- | --- | --- |
| 12573756 | State Drivers License | | JSCOTT4483@YAHOO.COM | | |

| ID 2 Number | ID 2 Type | Employer |
| --- | --- | --- |
| TX TRUST | | |

Signature _Calvin G Scott_

### Certification as to taxpayer identification number and backup withholding

Instruction to Signer: If you have been notified by the Internal revenues Service (IRS) that you are subject to backup withholding due to payee underreporting and you have not received notice from the IRS that the backup withholding has terminated, you must strike out the language in clause 2 of the certification below

Under penalties of perjury, by signing this application, I certify (1) that the number shown on this form is my correct taxpayer identification number and (2) that I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding, and (3) that I am a U.S. person (including a U.S. resident alien).

Primary Account Holder _Calvin G Scott_

### Joint Account Holder

| First | | Middle | Last |
| --- | --- | --- | --- |
| | | | |

| Address | | Apt. | City | | State | Zip |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |

| SSN/TIN | Date of Birth | Home Phone | Work Phone | Mobile Phone | ChexSystems |
| --- | --- | --- | --- | --- | --- |
| | __/__/__ | | | | |

| ID 1 Number | ID 1 Type | E-Mail | Thumbprint |
| --- | --- | --- | --- |
| | | | |

| ID 2 Number | ID 2 Type | Employer |
| --- | --- | --- |
| | | |

Signature

### Joint Account Holder

| First | | Middle | Last |
| --- | --- | --- | --- |
| | | | |

| Address | | Apt. | City | | State | Zip |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |

| SSN/TIN | Date of Birth | Home Phone | Work Phone | Mobile Phone | ChexSystems |
| --- | --- | --- | --- | --- | --- |
| | __/__/__ | | | | |

| ID 1 Number | ID 1 Type | E-Mail | Thumbprint |
| --- | --- | --- | --- |
| | | | |

| ID 2 Number | ID 2 Type | Employer |
| --- | --- | --- |
| | | |

Signature

# TEXAS TRUST
### C R E D I T   U N I O N

| | |
|---|---|
| Account: | 0000404797-30 |
| Ownership Type: | Single Party |
| Date: | 08/25/2014 |
| Created By: | Nick Watson |
| Approved By: | |

## Membership Application

Please Refer to your Account Agreement for a description of the different aspects and conditions of account ownership available to you. Your account will be a Single Party Account unless you identify a Joint Owner below and all parties sign the Membership Application. All joint Accounts are designated as Joint with Right of Survivorship.

The undersigned, as authorized representative (s) of the Membership Applicant, hereby make application for membership in TEXAS TRUST CREDIT UNION and agree to subscribe to at least one share. In considering this application and/or any request for financial services, the undersigned authorize the Credit Union to verify credit and employment history and/or have a credit-reporting agency prepare a credit report on the undersigned, as individuals. The undersigned agree to conform to the Credit Union's rules, regulations, bylaws and policies now in effect and as amended or adopted hereafter. The undersigned also acknowledge receipt of the Credit Union's Account Agreement, Truth-in-Savings Disclosures, Rate and Fee Schedule, Funds Availability Disclosures and Electronic Funds Transfer Disclosures, which are incorporated into and made a part of this application, and agree to the terms and conditions stated therein, in addition to any amendments the Credit Union may make from time to time. THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.

### Primary Account Holder

| First | Middle | Last | | | | Membership Eligibility |
|---|---|---|---|---|---|---|
| Calvin | G | Scott | | | | Live |

| Address | | | Apt. | City | | State | Zip |
|---|---|---|---|---|---|---|---|
| 1635 Saddle Creek Apt 1727 | | | | Arlington | | Tx | 76015 |

| SSN/TIN | Date of Birth | Home Phone | | Work Phone | Mobile Phone | ChexSystems |
|---|---|---|---|---|---|---|
| 348409218 | 09/22/1951 | 817-473-2560 | | 817-366-3459 | | |

| ID 1 Number | ID 1 Type | | E-Mail | | Thumbprint |
|---|---|---|---|---|---|
| 12573756 | State Drivers License | | JSCOTT4483@YAHOO.COM | | |

| ID 2 Number | ID 2 Type | | Employer | |
|---|---|---|---|---|
| TX TRUST | | | | |

Signature: _[signed]_

### Certification as to taxpayer identification number and backup withholding

Instruction to Signer: If you have been notified by the Internal revenues Service (IRS) that you are subject to backup withholding due to payee underreporting and you have not received notice from the IRS that the backup withholding has terminated, you must strike out the language in clause 2 of the certification below.

Under penalties of perjury, by signing this application, I certify (1) that the number shown on this form is my correct taxpayer identification number and (2) that I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding, and (3) that I am a U.S. person (including a U.S. resident alien).

Primary Account Holder: _[signed]_

### Joint Account Holder

| First | Middle | Last | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| Address | | | Apt. | City | | State | Zip |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| SSN/TIN | Date of Birth | Home Phone | Work Phone | Mobile Phone | ChexSystems |
|---|---|---|---|---|---|
| | --/--/---- | | | | |

| ID 1 Number | ID 1 Type | E-Mail | | Thumbprint |
|---|---|---|---|---|
| | | | | |

| ID 2 Number | ID 2 Type | Employer | |
|---|---|---|---|
| | | | |

Signature

### Joint Account Holder

| First | Middle | Last | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| Address | | | Apt | City | | State | Zip |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| SSN/TIN | Date of Birth | Home Phone | Work Phone | Mobile Phone | ChexSystems |
|---|---|---|---|---|---|
| | --/--/---- | | | | |

| ID 1 Number | ID 1 Type | E-Mail | | Thumbprint |
|---|---|---|---|---|
| | | | | |

| ID 2 Number | ID 2 Type | Employer | |
|---|---|---|---|
| | | | |

Signature



# TEXAS TRUST
## C R E D I T   U N I O N

```
Acct *******17
Eff: 08/25/14        Date: 08/25/14
Tlr: 1249            Time:  1:07pm
Doc Number:               9836956
```

---

```
Deposit to  MEGA FLEX CD 90
Prev Bal:               70,145.98
Maturity date:           11/13/14
Amount:                     20.76
New Bal:                70,166.74
Seq:                      #326696
Comment for MEGA FLEX CD 90
APY Earned  0.45% 08/01/14 to
                         08/24/14
Share Dividend              20.76
```

---

Enter for a chance to win $50!!

Your opinion is important to us.
Please share your experience with
the service provided by
NICK during today's visit.

Go to TexasTrustCU.org/survey
and enter the following
response code: RY-G5RHJ-19
***



# TEXAS TRUST
### C R E D I T   U N I O N

```
Acct ********17
Eff: 08/25/14          Date: 08/25/14
Tlr: 1249              Time:  1:08pm
Doc Number:              9836964
```

---

```
Withdrwl from  MEGA FLEX CD 90
Prev Bal:              70,166.74
Maturity date:          11/13/14
Interest:                  77.67
Amount:                70,089.07
New Bal:                    0.00
Seq:                    #326837
Deposit to  FREE & FLEXIBLE 30
Acct XXXXXXXXXX
SCOTT,CALVIN G
Amount:                70,089.07
Seq:                    #326838
Share Penalty             -77.67
```

---

```
        Authorized by
        _____

ID Source:
    Drv Lic  _____
    SigCard
    2nd ID   _____
    Other    _____
```

Enter for a chance to win $50!!

Your opinion is important to us.
Please share your experience with
the service provided by
NICK during today's visit.

Go to TexasTrustCU.org/survey
and enter the following
response code: T6-G5RHJ-19
          ***



# TEXAS TRUST
### C R E D I T   U N I O N

Acct *******97
Eff: 08/25/14          Date: 08/25/14
Tlr: 1249              Time:  1:09pm
Doc Number:                   9836969

---

Withdrwl from  FREE & FLEXIBLE 30
Prev Bal:               70,089.07
Amount:                      5.00
New Bal:                70,084.07
Seq:                      #326913
Deposit to  REGULAR SHARE 01
Prev Bal:                    0.00
Amount:                      5.00
New Bal:                     5.00
Seq:                      #326914

---

Authorized by

ID Source:
    Drv Lic  _____
    SigCard
    2nd ID   _____
    Other    _____


Enter for a chance to win $50!!

Your opinion is important to us.
Please share your experience with
      the service provided by
   NICK during today's visit.

 Go to TexasTrustCU.org/survey
     and enter the following
   response code: WJ-RXRHJ-19
              * * *

# DURDEN LAW FIRM

Todd A. Durden, Esq.

131 E.Vine St.
Keller, TX 76248
*durdenlawyer@att.net*

Phone  817/431-0099
Fax     817/431-0096
*www.thedurdenlawfirm.com*

---

Robert T. Stites, Esq.
933 West Weatherford St.
Fort Worth, Texas 76102

Fax:  817/336-7583
Phone: 817/336-7577

Sent on <u>August 25, 2014</u>

Copy by regular mail: <u>Yes</u>

No. of pages including cover:<u>  9 </u>

## FAX COVER SHEET

The information contained in this facsimile transmission is confidential and may be privileged under the attorney/client privilege recognized under Texas and Federal law. It is intended for use by the above-named recipient only. If for some reason this transmission is not received by the above-named recipient, you are hereby put on notice that any dissemination, distribution, publication or copying of this communication is prohibited. If you have received this communication in error, please call the sender at 817/431-0099 (you may call collect); we will arrange to have the documents you have received destroyed or returned to us at no cost to you.

Re:     Cause No. 324-551602-14, ITMOMO of Scott

Dear Mr. Stites:

Enclosed herewith please find correspondence from Mr. Durden in connection with the above referenced matter.

Sincerely,

Carmen Griffith
*Legal Assistant to Todd A. Durden*

TAD/jcg

Enclosure: As stated above

cc:     Client        (w/ enc's)                                Via email



**Robert Stites** <stitesattorney@gmail.com>

## In the Matter of the Marriage of Scott

**Robert Stites** <stitesattorney@gmail.com>                                Tue, Aug 26, 2014 at 2:48 PM
To: durdenlawyer@att.net
Cc: Jill Scott <pickitup79@yahoo.com>

Mr. Durden:My client and I have received your August 25, fax. I am surprised, frustrated and upset that you and Mr Scott would undertake to unilaterally violate provisions 6, 9, 10 and 11 of the mutual temporary injunction in effect. You and Mr. Scott have absolutely no right to negotiate a community property Certificate of Deposit for hypothetical future legal fees. You have cost the community estate lost interest on the CD and perhaps a penalty for cashing out early. The documents you sent me indicate that a $35,000 account has been opened only in the name of Calvin Scott. Please restore these monies to the community estate immediately—including lost interest and penalty, if any. Please provide verification of this immediately. Please do not force me to seek relief from the 324 th District Court. Robert Stites



**DURDEN LAW FIRM**

ᴊdd A. Durden, Esq.

131 E. Vine St.
Keller, TX 76248
*durdenlawyer@att.net*

*Office:* 817/431-0099
*Fax:* 817/431-0096
*www.thedurdenlawfirm.com*

Robert T. Stites, Esq.
933 West Weatherford St.
Fort Worth, Texas 76102

August 29, 2014
*Via Fax: 817-336-7583*
*Via First Class Mail*

Re: *ITMOTMO Bette Jill Scott and Calvin Gregory Scott*
     Cause No. 324-551602-14

Dear Mr. Stites:

Thank you for calling my office yesterday to follow up on our recent exchange of correspondence. I understand your position that you do not believe0 Mr. Scott has properly accessed community property for the purpose of the payment of attorney's fees and litigation expenses. I also understand your position that you oppose a real estate appraisal of the parties' principal residence.

As we discussed, no community funds have been expended. The certificate of deposit was closed. One half of this funds from the CD were left on deposit with the same bank. The other half were deposited into my trust account. I will preserve the funds in my trust account until a hearing is held in this matter, and Mr. Scott will not access the other half of the funds.

My legal assistant, Lorraine, will try to arrange a time for a hearing in this case with respect to these issues. I look forward to your cooperation to set this matter for a time and date convenient for the parties and the attorneys.

Sincerely,

Todd A. Durden

TAD/lmr

cc:      Client                                Via Email

# DURDEN LAW FIRM

Todd A. Durden, Esq.

131 E.Vine St.
Keller, TX 76248
*durdenlawyer@att.net*

Phone  817/431-0099
Fax      817/431-0096
*www.thedurdenlawfirm.com*

---

Robert T. Stites, Esq.
933 West Weatherford St.
Fort Worth, Texas 76102

Fax: 817/336-7583
Phone: 817/336-7577

Sent on <u>August 29, 2014</u>

Copy by regular mail: <u>Yes</u>

No. of pages including cover:__2__

## FAX COVER SHEET

The information contained in this facsimile transmission is confidential and may be privileged under the attorney/client privilege recognized under Texas and Federal law. It is intended for use by the above-named recipient only. If for some reason this transmission is not received by the above-named recipient, you are hereby put on notice that any dissemination, distribution, publication or copying of this communication is prohibited. If you have received this communication in error, please call the sender at 817/431-0099 (you may call collect); we will arrange to have the documents you have received destroyed or returned to us at no cost to you.

*Re:    Cause No. 324-551602-14, ITMOMO of Scott*

Dear Mr. Stites:

Enclosed herewith please find correspondence from Mr. Durden in connection with the above referenced matter.

Sincerely,

Lorraine M. Robinson
*Legal Assistant to Todd A. Durden*

TAD/lmr

cc:    Client

Via email

# HP LaserJet M1536dnf MFP

# Fax Confirmation

Durden Law firm
817-431-0096
Aug-29-2014    1:26PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 5229 | 8/29/2014 | 1:25:47PM | Send | 8173367583 | 1:06 | 2 | OK |

---

**DURDEN LAW FIRM**

Todd A. Durden, Esq.

131 E. Vine St.
Keller, TX 76248
durdenlawyer@att.net

Phone  817/431-0099
Fax    817/431-0096
www.thedurdenlawfirm.com

---

Robert T. Stites, Esq.
933 West Weatherford St.
Fort Worth, Texas 76102

Fax: 817/336-7583
Phone: 817/336-7577

Sent on August 29, 2014

Copy by regular mail: Yes

No. of pages including cover: 2

## FAX COVER SHEET

The information contained in this facsimile transmission is confidential and may be privileged under the attorney/client privilege recognized under Texas and Federal law. It is intended for use by the above-named recipient only. If for some reason this transmission is not received by the above-named recipient, you are hereby put on notice that any dissemination, distribution, publication or copying of this communication is prohibited. If you have received this communication in error, please call the sender at 817/431-0099 (you may call collect); we will arrange to have the documents you have received destroyed or returned to us at no cost to you.

Re:    Cause No. 324-551602-14, ITMOMO of Scott

Dear Mr. Stites:

Enclosed herewith please find correspondence from Mr. Durden in connection with the above referenced matter.

Sincerely,

Lorraine M. Robinson
*Legal Assistant to Todd A. Durden*

TAD/lmr

cc:    Client

Via email

# CERTIFICATE OF SERVICE

I hereby to certify the timely service of this Reporter's sworn record in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure upon the following:

| | |
|---|---|
| Respondent: | Hon. Jerome S. Hennigan, Presiding Judge<br>324th Judicial District Court<br>Tarrant County Family Law Center<br>200 East Weatherford Street, 4th Fl.<br>Fort Worth, Texas 76196-0232 |
| Attorney for<br>Real Party in Interest - Wife | Robert T. Stites<br>933 West Weatherford Street<br>Fort Worth, Texas 76102 |
| Attorney for<br>Real Party in Interest - Husband | Mark J. Rosenfield<br>933 West Weatherford Street<br>Fort Worth, Texas 76102 |

/s/ Todd A. Durden